James R. MALUTIN, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–9742, A–9981.

Court of Appeals of Alaska.

Jan. 9, 2009.

Glenda Kerry, Assistant Public Advocate, and Joshua P. Fink, Public Advocate, and Rachel Levitt, Acting Public Advocate, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

In 1996, James R. Malutin was charged with first-degree burglary and first-degree sexual abuse of a minor. These charges were resolved when Malutin agreed to plead no contest to a single charge of attempted first-degree sexual abuse of a minor. Malutin further agreed that he would receive a sentence of 12 years' imprisonment with 7 years suspended—*i.e.*, 5 years to serve—for this crime.

Before the superior court could lawfully impose this negotiated sentence, the State had to establish one or more of the aggravating factors listed in AS 12.55.155(c). This was because attempted first-degree sexual abuse of a minor is a class A felony,[1] and, under Alaska's pre–2005 presumptive sentencing law, Malutin faced a 5–year presumptive term for this offense.[2] In the absence of aggravating factors, the superior court had no authority to exceed this prescribed 5–year presumptive term—even if all of the additional jail time was suspended.[3]

Thus, to enable the superior court to impose the agreed-upon sentence of 12 years

---

**1.** The completed crime of first-degree sexual abuse of a minor is an unclassified felony, *see* AS 11.41.434(b), so an attempt to commit this crime is a class A felony. *See* AS 11.31.100(d)(2).

**2.** Former AS 12.55.125(c)(1) (pre-March 2005 version).

**3.** Former AS 12.55.125(g) and former AS 12.55.155(a) (pre-March 2005 versions); *Milligrock v. State*, 118 P.3d 11, 14 (Alaska App.2005).

with 7 years suspended, Malutin stipulated to two aggravating factors under AS 12.55.155(c): (c)(5)—that Malutin knew the victim of his offense was particularly vulnerable or incapable of resistance because of her extreme youth; and (c)(19)—that Malutin's prior criminal history included a delinquency adjudication for conduct that would have been a felony if committed by an adult.

Malutin received the agreed-upon sentence, and he served his initial time in prison. He was then released to probation, which he violated several times. While his most recent probation revocation proceedings were pending, Malutin raised a constitutional challenge to his plea agreement. The superior court rejected Malutin's challenge—giving rise to the present appeal.

*The litigation in the superior court*

Malutin's challenge to his plea agreement was based on the Sixth Amendment right to jury trial recognized by the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Under *Blakely*, Malutin (and all other defendants subject to presumptive sentencing under Alaska's pre–2005 law) had the right to demand a jury trial on any aggravating factors alleged by the State (other than those premised on prior criminal convictions), and the concomitant right to demand that the State prove these aggravators beyond a reasonable doubt.[4] Malutin asserted that his plea agreement with the State was invalid because (as explained above) the lawfulness of Malutin's agreed-upon sentence hinged on the State's proof of the aggravators, and because (according to Malutin) he was unlawfully denied his right to jury trial on those aggravators.

Malutin acknowledged that he had stipulated to the two aggravating factors, but he argued that he should not be held to this stipulation. Malutin asserted that, because of *Blakely*, aggravating factors must be deemed necessary elements of a defendant's underlying crime. And, according to Malutin, because the two aggravators were really

elements of his offense, the superior court could not lawfully accept a stipulation concerning these aggravators from Malutin's attorney without also personally addressing Malutin and obtaining his personal waiver of his right to jury trial on these aggravators.

In addition, Malutin asserted that there was no factual basis for aggravator (c)(19) (prior delinquency adjudication for felony conduct). Malutin noted that he was adjudicated a delinquent minor for the offense of fourth-degree sexual abuse of a minor— which is not a felony, but rather a class A misdemeanor. *See* AS 11.41.440(b).

In opposition to Malutin's claim, the State argued that Malutin should not be allowed to withdraw his stipulation to the aggravating factors because that stipulation was a necessary ingredient of the plea bargain and the negotiated sentence.

With regard to Malutin's claim that there was no factual basis for aggravator (c)(19), the State conceded that Malutin's delinquency adjudication was for fourth-degree sexual abuse of a minor, and that this offense is a misdemeanor. However (as we explain in more detail below), the State argued that reasonable people could differ as to whether this delinquency adjudication could still serve as the basis for aggravator (c)(19). And the State pointed to this Court's decision in *Connolly v. State*, 758 P.2d 633, 638 (Alaska App.1988), where we recognized that a sentencing judge has the authority to accept the parties' stipulation regarding an aggravating or mitigating factor if the existence of the factor is in reasonable dispute and the parties' stipulation represents their compromise (*i.e.*, agreed-upon resolution) of this dispute.

Superior Court Judge Eric A. Aarseth denied Malutin's motion, concluding that the right to jury trial recognized in *Blakely* was not retroactive—*i.e.*, that the right did not apply to any defendant whose conviction was entered before *Blakely* was decided.

About two months later, this Court issued our decision in *Smart v. State*, 146 P.3d 15 (Alaska App.2006). In *Smart*, we held that, under Alaska law, the *Blakely* right to jury trial is retroactive. 146 P.3d at 40.

---

4. *See Blakely*, 542 U.S. at 301, 124 S.Ct. at 2536.

Following our decision in *Smart*, Malutin filed a new motion challenging his sentence. This time, Malutin asked the superior court to rescind his plea agreement under Alaska Criminal Rule 35(a), the rule that authorizes the superior court to correct an illegal sentence. Malutin argued that his negotiated sentence was illegal under *Blakely*. Malutin's underlying arguments were essentially the same: (1) that he had a right to jury trial with regard to aggravator (c)(5), (2) that the superior court could not accept his attorney's stipulation to this aggravator without also obtaining Malutin's personal waiver of the right to jury trial, and (3) that, in any case, there was no factual or legal basis for aggravator (c)(19).

■ (As Malutin correctly noted in his motion, when a defendant believes that a negotiated sentence is unlawful under *Blakely*, the defendant must seek rescission of the entire plea agreement under Criminal Rule 11(h)—and not just deletion of the portion of the sentence that purportedly violates *Blakely*. *See Woodbury v. State*, 151 P.3d 528, 532 (Alaska App.2007).)

Malutin's motion was assigned to Superior Court Judge Craig Stowers. In a written decision, Judge Stowers denied the motion for two pertinent reasons. First, Judge Stowers concluded that *Blakely* was not retroactive, and thus Malutin could not claim the benefit of *Blakely*. Judge Stowers understood that his ruling was at odds with this Court's decision in *Smart*, but he concluded that he was not bound by *Smart*.

To support the conclusion that he was not bound by our decision in *Smart*, Judge Stowers relied on the wording of Alaska Appellate Rule 507(b), which declares that a decision issued by an appellate court—either this Court or the Alaska Supreme Court—normally "takes effect . . . on the day specified in [Appellate] Rule 512(a) for return of the record [to the trial court]."

As Judge Stowers noted, if a party petitions the supreme court to hear a case decided by this Court, the record is not returned to the trial court until the supreme court resolves the petition for hearing. *See* Appellate Rule 512(a)(2). Reading Appellate Rule 507(b) and Appellate Rule 512(a)(2) in conjunction, and knowing that the State's petition for hearing in *Smart* remained unresolved,[5] Judge Stowers concluded that this Court's decision in *Smart* had not yet taken effect—and thus the *Smart* decision did not bind him (or any other superior court judge).

Judge Stowers alternatively ruled that, even if he was bound by this Court's ruling that *Blakely* is retroactive in Alaska, Malutin would still not be entitled to relief because Malutin stipulated to the two contested aggravating factors as part of a negotiated plea. The judge noted that *Blakely* itself holds that a defendant can concede aggravating factors and give up the right to jury trial. The judge also noted that, in *Woodbury v. State*, this Court held that it is not plain error for a sentencing judge to accept a defense attorney's concession of one or more aggravating factors without separately addressing the defendant personally and obtaining the defendant's explicit waiver of the right to jury trial. *See Woodbury*, 151 P.3d at 531.

### Does this Court's decision in Smart v. State control this litigation?

In *Smart*, this Court held that the Sixth Amendment right of jury trial recognized in *Blakely* applies to Alaska defendants whose convictions pre-date *Blakely*. However, as explained above, the superior court ruled that our decision in *Smart* is not binding on any trial court. The superior court noted that the State has petitioned the Alaska Supreme Court to review our decision, and the supreme court has not yet resolved the State's petition. Because of these circumstances, and because Appellate Rule 507(b) and Appellate Rule 512(a) (taken in conjunction) declare that the decision of an appellate court normally "takes effect" only when all further avenues of review and reconsideration have been exhausted or waived, the superior court ruled that the decision in *Smart* had not yet taken effect.

---

5. It still remains unresolved as of today. See *State v. Smart*, Supreme Court File No. S-12493; petition filed November 13, 2006; petition granted February 13, 2007.

On appeal, Malutin argues that the superior court was wrong, and that our decision in *Smart* controls this litigation. The State, for its part, does not offer a defense of the superior court's ruling on this issue. Rather, the State argues that the issue of *Blakely*'s retroactivity is moot—because (according to the State) Malutin is not entitled to relief even if *Blakely* applies to his case.

As we explain in the next section of this opinion, we agree with the State that even if our decision in *Smart* controls this litigation, Malutin is not entitled to relief. For this reason, we need not decide whether the superior court correctly construed Appellate Rule 507(b). However, because this issue is a significant one, we believe that we should include a short explanation of the history of Appellate Rule 507(b)—not to announce any opinion on the question of whether the superior court's ruling was correct, but rather to inform any later litigation of this point.

Appellate Rule 507 was first enacted in 1980, as part of a comprehensive revision and restructuring of Alaska's rules of appellate procedure.[6] As first enacted, paragraph (a) of Rule 507 directed the appellate clerk to issue a "mandate" at the conclusion of the appellate proceedings. As defined in this former version of Rule 507(a), the "mandate" was a court order—separate from the opinion issued by the appellate court—that "in-

form[ed] the trial court of the proceedings in the appellate courts" and that formally returned "full jurisdiction over the case ... to the trial court" (unless the mandate specified otherwise).

Paragraph (b) of Rule 507 contained a set of rules for determining when the clerk should issue the mandate. These rules are the same ones now found in Appellate Rule 512(a) for determining when the record should be returned to the trial court. In other words, the clerk issued the mandate when all further avenues of review and reconsideration had been exhausted or waived.

This practice of issuing a "mandate" at the end of the appellate proceedings was a continuation of the practice codified in Alaska's predecessor rule, Supreme Court Rule 28.[7] Indeed, even today, this practice is followed by the federal courts (*see* Federal Appellate Rule 41) and many state courts.[8] As explained in Wright, Miller, and Cooper's *Federal Practice and Procedure: Jurisdiction and Related Matters* (3rd ed.1999), the mandate is the appellate court's order to the lower court, directing the lower court to take whatever further action is necessary and/or appropriate in light of the appellate court's decision. The "spreading" of the mandate is the act that formally returns jurisdiction over the case to the lower court.[9]

---

**6.** See Supreme Court Order No. 439 (effective November 15, 1980).

**7.** See the first two paragraphs of the 1980 commentary to Rule 507.

**8.** *See, e.g., Boldin v. State,* 2008 WL 4958294, *1 (Ark. November 20, 2008) ("Where [a defendant's judgment] of conviction [has been] affirmed on appeal, Arkansas Rule of Criminal Procedure 37.2(c) requires that [a defendant's] petition for postconviction relief be filed within sixty days of the issuance of the appellate court's mandate."); *Robbins v. State,* 992 So.2d 878, 879 (Fla.App. 5th Dist.) 2008) (noting that, under Florida Rule of Criminal Procedure 3.800(c), "a court may reduce or modify a sentence within sixty (60) days after imposition of the sentence or after receipt by the court of a mandate issued by the appellate court on affirmance of the judgment and/or sentence on an original appeal."); *State v. Snow,* 195 P.3d 282, 286 (Kan.App.2008) (noting that, under Kansas law, the intermediate court of appeals can inter-

pret, and can review a trial court's compliance with, a mandate issued by the Kansas Supreme Court); *Jackson v. State,* 182 Md.App. 588, 959 A.2d 84, 86 (2008) (quoting a Maryland statute which, by its terms, applies "to all cases in the Court of Special Appeals in which the mandate has not been issued as of the effective date of this Act."); *In re Shah,* — So.2d —, — n. 5, 2008 WL 4427951, *3 n. 5 (Miss. October 2, 2008) (noting that, "[p]ursuant to Mississippi Rule of Appellate Procedure 41(a), the mandate of the Supreme Court shall issue seven days after entry of the order denying the motion for rehearing."); *State v. Hausmann,* 17 Neb.App. 195, 758 N.W.2d 54, 57 (2008) (noting that, under Nebraska law, an appellate court's jurisdiction over a case "ends when the [lower] court acts on the [appellate] court's mandate"); *In re K.Y.,* 273 S.W.3d 703, 707, 2008 WL 4809548, *3 (Tex. App. (14th Dist.) November 6, 2008) (holding that a trial court is not deprived of jurisdiction by the filing of an *interlocutory* appeal, and thus the trial court has the authority to proceed with a trial even before the appellate court issues its mandate in the interlocutory appeal).

In other words, the appellate court's *opinion* was its statement of the law, while the appellate court's *mandate* was its order returning jurisdiction over the case to the lower court, and directing the lower court to perform whatever actions were necessary or proper to carry out the appellate court's decision in that particular case.

One potential problem with this system is that the directions to the trial court contained in the mandate might differ from the actions seemingly called for by the appellate court's opinion. A second problem with this system is that, if the appellate court fails to issue a mandate (even if this failure is a result of mistake or oversight), the lower court might never resume lawful control over the case. *See, e.g., Bell v. Thompson*, 545 U.S. 794, 125 S.Ct. 2825, 162 L.Ed.2d 693 (2005). Thus, whatever decision might have been announced by the appellate court, the lower court would have no authority to put the appellate decision into effect in the particular case before it.

In December 1982, the Alaska Supreme Court amended Appellate Rules 507 and 512 in a way that solved these problems—by eliminating the requirement of a "mandate". See Supreme Court Order No. 551, effective February 1, 1983, which the court described (in the title of the order) as an amendment "to eliminate the issuance of mandates". In this order, the supreme court re-wrote paragraph (a) of Appellate Rule 507 to its present form. Rule 507(a) now says:

> The opinion of the appellate court, or its order under Rule 214, shall constitute its judgment, and shall contain its directions to the trial court, if any. No mandate shall be issued.

As explained above, the "mandate" performed two functions: it contained the appellate court's directions to the lower court, and it was the order that formally returned jurisdiction over the case to the lower court. The revised version of Rule 507(a) provides a substitute method for fulfilling the mandate's first function—by requiring the appellate court to include its directions to the lower court in the text of the opinion itself. But Rule 507(a) does not provide a substitute for the mandate's second function: the formal return of jurisdiction to the lower court, giving the lower court the authority to put the appellate court's decision into effect in the case before it.

This second function of the mandate is now addressed in paragraph (b) of Rule 507:

> Unless the opinion or order expressly states otherwise, the judgment of the appellate court takes effect and full jurisdiction over the case returns to the trial court on the day specified in Rule 512(a) for return of the record. However, in an appeal under Appellate Rule 207 relating to [the bail] release [of a criminal defendant] prior to judgment, the judgment of the Court of Appeals takes immediate effect and full jurisdiction over the case returns to the trial court on the day the Court of Appeals issues its opinion or order deciding the appeal.

In other words, in all appellate cases except pre-sentencing bail appeals, the return of jurisdiction to the trial court takes place automatically on the day that the record is returned to the trial court, as determined by the rules set forth in Appellate Rule 512(a).

As explained above, Rule 512(a) codifies the same rules that used to be contained in the pre–1983 version of Rule 507(b). That is, Rule 512(a) calls for the record to be returned to the lower court when all further avenues of appellate review and reconsideration have been exhausted or waived—the same rule that governed the issuance of the appellate court's mandate under former Rule 507(b). Thus, under the current version of Rules 507 and 512, jurisdiction over a case returns to the lower court at precisely the same time that jurisdiction would have been returned to the lower court under the previous version of Rule 507.

The supreme court may have thought that the current version of Rule 507 (read in conjunction with Rule 512) was simply a substitute for the pre–1983 version of Rule

**9.** Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure:* *Jurisdiction and Related Matters* (3rd ed.1999), § 3987, Vol. 16A, pp. 735–36.

507—with the advantage that the law no longer required the procedural complication of a separately issued "mandate". But as Judge Stowers's ruling in Malutin's case illustrates, the supreme court introduced an ambiguity into the law when the court rewrote Rule 507(b) to say that "the judgment of the appellate court takes effect ... on the day specified in Rule 512(a) for return of the record".

The history of Rule 507 suggests that this language was intended to address (and provide a substitute for) the mandate's role as the appellate court's "judgement"—the formal order returning jurisdiction over that particular case to the lower court, and directing the lower court to comply with the appellate court's decision. Interpreted in this fashion, Rule 507(b) would not delay the precedential effect of the appellate court's decision insofar as the court had interpreted or defined the law for future cases. Rather, Rule 507(b) would delay only the operative effect of the appellate court's "judgement"—*i.e.*, the court's formal order affecting the lower court's judgement in the case before it.

But as we explained above, the superior court in Malutin's case interpreted this wording to mean that the decision of an appellate court has absolutely no effect until the time specified in Rule 512(a) has arrived—*i.e.*, until all further avenues of review and reconsideration have been exhausted or waived. Under this reading of Rule 507(b), the statements of law contained in an appellate court's opinion would have no binding effect on *any* court (even that same appellate court itself) until the record was returned to the lower court in that particular case.

To our knowledge, this point of law has never before been addressed in an Alaska appellate decision. And the law from other jurisdictions provides no clear answer.

The Kansas Court of Appeals has declared that the answer is self-evident: "It requires no citation of authority to note that Court of Appeals' decisions do not become the law of this state until a petition for [supreme court] review, if filed, has been denied and a mandate has been issued." *State v. Oliver,* 30 Kan.App.2d 665, 46 P.3d 36, 38 (2002).

But other states do not find this principle of law to be self-evident. Instead, these states declare—either by court decision or court rule—that interpretations of the law adopted by an intermediate appellate court are immediately binding, and remain so until such time as the intermediate court's decision is reversed by a higher court. *See Hickey v. Riera,* 332 Ill.App.3d 532, 266 Ill.Dec. 223, 774 N.E.2d 1, 10 (1st Dist. 2001) (stating that "[j]udgments of the appellate court are operative from the time of their entry"); *Upton v. Swedish American Hospital,* 157 Ill.App. 126, 1910 WL 2204 (1st Dist. 1910) (same); *Ex parte Rutherford,* 556 S.W.2d 853, 855 (Tex.Civ.App.1977) ("an application for writ of error to the [Texas] Supreme Court [merely] deprives the judgment of a Court of Civil Appeals of the degree of finality contemplated by the statute governing the issuance of mandates"); California Rules of Court 8.1115(d) ("A published California opinion may be cited or relied on as soon as it is certified for publication or ordered published.").

As we noted at the beginning of this section, we do not need to resolve this issue in Malutin's case. However, we take judicial notice that, each year, several dozen of this Court's decisions become the subjects of petitions for hearing to the Alaska Supreme Court. The great majority of these petitions are denied, but when a petition is granted, the supreme court sometimes takes two or three years to decide the case.[10]

Accordingly, there is some reason to expect that the issue presented here—*i.e.*, the legal status of this Court's interpretations of the law in cases where a petition for hearing has been filed and remains unresolved—will be raised again. If this issue is raised again,

---

**10.** According to records informally kept by this Court over the past 15 years, the average elapsed time is 525 days (slightly under 1½ years) between the order granting a petition for hearing and the supreme court's issuance of an opinion resolving the petition. In some instances, the supreme court has taken more than three years to decide the case. *See State v. Coon,* File No. S–6893 (3 years 9 months); *State v. Blank,* File No. S–9721 (3 years 8 months); *Martin v. State,* File No. S–10139 (3 years 2 months); *Munson v. State,* File No. S–10444 (3 years 7 months).

the trial courts and the litigants will have the benefit of our discussion here.

### Why we conclude that Malutin is not entitled to relief even if the Blakely right to jury trial applies to his case

If we assume that the *Blakely* right of jury trial applies retroactively to Malutin's case, this means that Malutin can challenge the legality of his sentence by attacking the two aggravating factors that the superior court relied on to impose a sentence above the presumptive term.[11] (However, as we explained above, and as we held in *Woodbury,* Malutin's remedy is not reduction of his sentence, but rather rescission of his plea agreement.)

Because Malutin did not demand a jury trial on these aggravators during his original sentencing proceedings, he must now show that any violation of *Blakely* amounted to plain error. *Lockuk v. State,* 153 P.3d 1012, 1017–18 (Alaska App.2007).

### Malutin's claim that the sentencing judge was required to obtain his personal waiver of the right to jury trial

█ As explained above, Malutin and the State agreed that he would receive a sentence of 12 years' imprisonment with 7 years suspended. But under Alaska's presumptive sentencing law, the superior court had no authority to impose this negotiated sentence unless one or more aggravating factors were proved. Accordingly, to carry out the plea bargain, Malutin agreed to concede aggravators (c)(5) (vulnerable victim) and (c)(19) (prior delinquency adjudication for felony conduct).

With respect to aggravator (c)(5), Malutin now argues that it is unlawful to hold him to his concession—both because he was unaware of his right to a jury trial on this aggravator, and because the superior court relied on the defense attorney's concession of this aggravator without ever addressing Malutin personally to obtain his explicit waiver of the right to jury trial.

In essence, Malutin asks us to overrule our decisions in *Lockuk* and *Cooper v. State,* 153 P.3d 371 (Alaska App.2007). In both *Lockuk* (which involved a pre-*Blakely* sentencing) and *Cooper* (which involved a post-*Blakely* sentencing), we held that a sentencing court does not commit plain error by relying on a defense attorney's concession of aggravating factors, without obtaining the defendant's personal concession and waiver of jury trial regarding the aggravators. *Lockuk,* 153 P.3d at 1016; *Cooper,* 153 P.3d at 372–73.

Our decisions in *Lockuk* and *Cooper* were premised on the fact that courts around the country have reached differing conclusions as to whether, in light of *Blakely,* a sentencing judge can rely on a defense attorney's concession of aggravating factors without also addressing the defendant personally. Because reasonable judges can (and do) differ on the legality of this procedure under *Blakely,* any arguable error in this procedure is not "plain".[12]

In his brief to this Court, Malutin argues that a post-sentencing attack on a negotiated sentence would be "an empty remedy if [a defense attorney's] prior stipulations to aggravating factors were set in stone". But this argument misses the point. We have never ruled—and we do not rule now—that a defense attorney's stipulation to aggravating factors is "set in stone". Rather, we hold that if a defendant wishes to attack such a stipulation after the fact, the defendant must present a valid ground for relief.

Here, Malutin claims that his attorney's stipulation to aggravator (c)(5) is invalid as a matter of law—on the theory that, under *Blakely,* an attorney has no authority to bind a client on such matters, and that the sentencing court can not proceed without the defendant's express, in-court waiver of the right to jury trial. To prevail on this claim, Malutin must show plain error. And as we held in *Lockuk* and *Cooper,* this procedure is not plain error. Therefore, Malutin is not entitled to relief on this claim.

---

**11.** *See Walsh v. State,* 134 P.3d 366, 373–74 (Alaska App.2006) (holding that Criminal Rule 35(a) is a proper procedural vehicle for raising a *Blakely* attack on a sentence).

**12.** *Lockuk,* 153 P.3d at 1016; *Cooper,* 153 P.3d at 373.

*Malutin's claim that there was no arguable factual or legal basis for aggravator (c)(19)*

■ In addition to aggravator (c)(5), Malutin also stipulated to aggravator (c)(19). This aggravator applies to defendants who have a prior delinquency adjudication "for conduct that would have been a felony if committed by an adult". Malutin argues that there was no factual or legal basis for this aggravator, and that therefore his stipulation to this factor was improper. See *Love v. State,* 799 P.2d 1343, 1346 (Alaska App. 1990), and *Hartley v. State,* 653 P.2d 1052, 1056 (Alaska App.1982)—both holding that, despite the willingness of the parties to stipulate or ignore the existence of aggravating and mitigating factors, a sentencing court must independently evaluate aggravators and mitigators.

Malutin's argument does not really hinge on the facts of his case, but rather on the legal meaning of the phrase, "conduct that would have been a felony if committed by an adult".

The parties agree that Malutin was adjudicated a delinquent minor because he committed the offense of fourth-degree sexual abuse of a minor as defined in AS 11.41.440(a)(1). In other words, at a time when Malutin was younger than 16, he engaged in sexual contact with a child who was younger than 13 and who was at least three years younger than Malutin himself.

Fourth-degree sexual abuse of a minor is a misdemeanor, not a felony.[13] Seemingly, then, Malutin's delinquency adjudication for this offense could not support a finding of aggravator (c)(19).

The State, however, points out that if Malutin had been an adult (*i.e.,* if he had been 18 or older), his sexual contact with a child under the age of 13 would have been a class B felony—the offense of second-degree sexual abuse of a minor under AS 11.41.436(a)(2). Based on this, the State contends that Malutin's delinquency adjudication was indeed premised on conduct that "would have been a felony if committed by an adult".

Although the State's suggested reading of the statutory language might be plausible at first blush, we must reject the State's interpretation because it leads to unfair and incongruous results.

The legislative policy behind all of the aggravating factors listed in AS 12.55.155(c) is to identify those factors that might distinguish a particular defendant's background or conduct from those of a typical first, second, or third felony offender.[14] With particular regard to aggravator (c)(19), the legislature's apparent purpose was to allow a sentencing court to increase the applicable presumptive term if (1) the defendant was technically a first, second, or third felony offender, but (2) the defendant had been charged as a juvenile and adjudicated delinquent for conduct that, but for the defendant's youth, would have been a felony.

The application of aggravator (c)(19) is straightforward in cases where the defendant's juvenile offense was a crime that does not hinge on the defendant's age. But when the defendant's age is an element of the crime, the analysis becomes more difficult.

Some conduct is a crime only if the defendant is below a certain age. An example of this is under-age drinking. Other conduct is criminal no matter how old the defendant is, but it is a more serious crime if the defendant is above a certain age. An example of this is the conduct at issue in Malutin's case—engaging in sexual contact with a person younger than 13 and at least 3 years younger than the defendant. This conduct is a misdemeanor (fourth-degree sexual abuse of a minor) if the defendant is younger than 16,[15] but a felony (second-degree sexual abuse of a minor) if the defendant is 16 or older.[16] Finally, some conduct is not a crime at all unless the defendant is above a certain age. Examples of this are the current statutes defining second- and third-degree sexual

13. *See* AS 11.41.440(b).

14. *See Petersen v. State,* 930 P.2d 414, 439 (Alaska App.1996); *Juneby v. State,* 641 P.2d 823, 833, 835 (Alaska App.1982), *modified on other grounds,* 665 P.2d 30 (Alaska App.1983).

15. AS 11.41.440(a)(1).

16. AS 11.41.436(a)(2).

abuse of a minor (consensual sexual penetration or contact with a 13–, 14–, or 15–year–old). Both of these offenses require proof that the offender was at least 17 years old and was also at least four years older than the victim.[17]

This third category of offenses—*i.e.*, the sexual offenses that require proof that the defendant was at least a certain age—most clearly demonstrates the flaw in the State's argument concerning the meaning of aggravator (c)(19). The legislature's reason for including the age requirement seems clear: the legislature did not intend the sexual abuse statutes to encompass consensual sex between teenagers of similar ages. Thus, there is no crime if a 17–year–old engages in consensual sexual intercourse or sexual contact (*e.g.,* genital touching) with a 14– or 15–year–old.

If, by chance, a juvenile who engaged in such conduct were later to commit a crime as an adult, it would seemingly make little sense for the State to ask the court to impose a harsher sentence on the theory that, if the defendant had only been older when he or she engaged in sexual activity with another teenager, the sexual activity *would* have been a crime. The fact that the defendant previously engaged in non-criminal sexual activity with another teenager of similar age does not indicate anything about the defendant's general criminal propensity or dangerousness.

The State's suggested interpretation of aggravator (c)(19) is based on this same flawed reasoning. The State argues that, even though a prior act of sexual contact may only have been a misdemeanor because of the ages of the two teenagers involved, that act of sexual contact should nevertheless trigger aggravator (c)(19) because the sexual contact would have been a felony if the circumstances had been different—that is, if the defendant had been older.

But the defendant was *not* older. That is why the offense is of lesser seriousness—why the legislature classified it as a misdemeanor.

At its heart, the State's argument is inconsistent with the policy that underlies the legislature's creation of the aggravating factors in AS 12.55.155(c). As we explained, the function of the aggravating factors is to identify defendants who, because of their history and/or their conduct in the present case, potentially present a significantly greater degree of danger or blameworthiness than a typical first, second, or third felony offender convicted of the same crime.

(Although proof of an aggravator does not necessarily mean that the defendant should receive a sentence greater than the applicable presumptive term, proof of the aggravator expands the range of sentences available to the judge when he or she exercises sentencing discretion using the *Chaney* criteria.[18])

 Malutin was adjudicated delinquent for an act of fourth-degree sexual abuse of a minor—sexual contact with a child who was under the age of 13, and who was at least 3 years younger than Malutin. Because this underlying conduct is a crime, one could argue that this conduct tends to show that Malutin is more dangerous or blameworthy than a typical felony offender in his situation. But aggravator (c)(19) does not encompass all delinquency adjudications for unlawful conduct of any type. Rather, the legislature has limited the aggravator to delinquency adjudications based on "conduct that would have been a felony if committed by an adult".

For the reasons explained here, we interpret this phrase to mean "conduct defined as a felony"—in other words, misconduct serious enough that the defendant would have been subject to felony penalties if the defendant had been tried and convicted under the adult criminal justice system rather than the juvenile justice system.

Fourth-degree sexual abuse of a minor is a class A misdemeanor. Even if Malutin had been prosecuted under the adult criminal justice system for this crime, he could not have been convicted of a felony. Thus, Malutin's delinquency adjudication for this offense

---

**17.** *See* AS 11.41.436(a)(1) (second-degree sexual abuse of a minor); AS 11.41.438(a) (third-degree sexual abuse of a minor).

**18.** *See Juneby v. State,* 641 P.2d 823, 833, 835, 838 (Alaska App.1982), *as modified on rehearing,* 665 P.2d 30, 32–33 (Alaska App.1983).

could not serve as the factual predicate for aggravator (c)(19).

*Why this error does not entitle Malutin to relief*

■ Even though we agree with Malutin that aggravator (c)(19) was misapplied in his case, we nevertheless conclude that he is not entitled to rescission of his plea bargain. Malutin also stipulated to aggravator (c)(5), and the existence of any single aggravator was sufficient to establish the superior court's authority to impose the negotiated sentence.[19]

The only argument that Malutin raises against aggravator (c)(5) is the argument we have already rejected—the argument that it was plain error for the sentencing judge to rely on Malutin's attorney's concession of this aggravator without also personally addressing Malutin himself and obtaining his express waiver of the right to jury trial. Therefore, Malutin's sentence remains legal despite the error with respect to aggravator (c)(19).

Malutin contends that we should not affirm the superior court's decision on this basis because "the weight that the [sentencing] judge ... placed on the [mistaken] applicability of aggravator (c)(19) can never be determined". We disagree. The record is clear that the sentencing judge placed no weight on this individual aggravator.

Malutin's stipulation to aggravators (c)(5) and (c)(19) was an integral part of the plea agreement because the negotiated sentence that Malutin agreed to receive—12 years' imprisonment with 7 years suspended—was legally impossible unless one or more aggravating factors were proved. And because Malutin's specific sentence was agreed upon beforehand, the parties did not intend for the sentencing judge to engage in a "weighing" of the two aggravating factors, as if the judge were conducting a typical sentencing. Rather, the parties presented a specific proposed sentence to the superior court, and the only question before the court was whether to accept the agreed-upon sentence. *See* Alaska Criminal Rule 11(e).

Either of the two aggravators would have been enough, standing alone, to authorize the superior court to impose the agreed-upon sentence, and the record does not explain why the parties agreed that Malutin would concede two. But there is nothing in the record to suggest that the parties contemplated that the sentencing judge would weigh these two aggravators individually—or, indeed, that the sentencing judge would engage in any exercise of sentencing discretion other than the decision whether to accept or reject the agreed-upon sentence.

For these reasons, we conclude that the superior court correctly rejected Malutin's claim that his sentence was illegal.

*Malutin's sentence appeal*

In addition to the claims we have already discussed, Malutin also argues that he received an excessive sentence in the most recent probation revocation proceedings.

After serving his initial 5 years of imprisonment (less good time), Malutin was released on probation. The State first petitioned the superior court to revoke Malutin's probation in August 14, 2000. The State's next revocation petition was filed in February 2002. The State's third petition was filed in December 2002. The fourth petition was filed in January 2005. The fifth (and current) petition to revoke Malutin's probation was filed in January 2006.

As a result of the first petition, Malutin was ordered to serve six months of his previously suspended jail time. As a result of the second petition, Malutin was ordered to serve an additional 60 days of his sentence. As a result of the third petition, the superior court sentenced Malutin to the time he served awaiting the disposition hearing. And as a result of the fourth petition, Malutin was ordered to serve one more year of his sentence.

In response to the fifth petition to revoke probation, Malutin informed the superior court that he intended to reject any further

---

**19.** *See Cleveland v. State,* 143 P.3d 977, 987 (Alaska App.2006) (holding that, under Alaska's pre-March 2005 presumptive sentencing law, the proof of any single *Blakely*-compliant aggravating factor was sufficient to satisfy *Blakely* ).

probation supervision. Malutin told the court that, if the court decided to revoke his probation again, he wanted a flat-time sentence. After reviewing Malutin's record, and after considering the arguments of the parties, Judge Aarseth imposed all of Malutin's remaining jail time.

Malutin contends that Judge Aarseth failed to conduct a meaningful evaluation of Malutin's sentence under the *Chaney* sentencing criteria—i.e., the sentencing goals first enunciated in *State v. Chaney*[20] and now codified in AS 12.55.005. Malutin further contends that Judge Aarseth committed error by reflexively imposing all of Malutin's remaining jail time simply because Malutin refused further probation supervision.[21]

We have examined the record, and it does not support Malutin's claims.

As we have explained, Malutin's probation had been revoked several times prior to the current revocation proceedings. We note, in particular, that Malutin had failed to complete one of the significant conditions of his probation: substance abuse treatment.

Malutin's alcohol abuse was pertinent to his underlying crime, and to his prospects for rehabilitation, because—as Malutin's attorney stated—his crime was committed at a time when he was "clearly intoxicated [and] out of control". Malutin began, but then failed to complete, the required alcohol treatment. He participated in the in-patient portion of the treatment, but then he was "terminated from [the] aftercare [program] for noncompliance". In addition, while on probation, Malutin committed the offense of reckless driving, and he consumed alcoholic beverages.

The superior court also properly considered the seriousness of Malutin's underlying crime and the consequent community condemnation of his actions. Although Malutin negotiated a plea to a reduced charge of attempted first-degree sexual abuse of a minor, his conduct apparently constituted the more serious crimes of first-degree sexual assault and first-degree burglary. Malutin broke into a house in the middle of the night and sexually attacked an eight-year-old girl who was sleeping inside.

The sentencing record shows that Judge Aarseth engaged in a lengthy consideration of the *Chaney* factors. Judge Aarseth noted that the probation conditions required by Malutin's plea agreement were "not just for [the benefit of] Mr. Malutin, but for the public [as well]." The judge also noted that, because Malutin had decided to reject further probation supervision, he posed a greater danger of recidivism in the future:

> *The Court:* [I]n terms of Mr. Malutin's successes [on probation] and the nature of his violation . . . , [his] supervised probation [acts as] a deterrent . . . [to] other violations[, and] more serious violations.
>
> . . .
>
> [T]he public has a right to have [Malutin] submit to probation. And if [he doesn't] want to, then [the sentencing criterion of] community condemnation [becomes more significant]. The rest of the suspended time gets imposed.

Judge Aarseth concluded that "the criteria of isolation and community condemnation" called for "impos[ition of] the remainder of Mr. Malutin's time."

Malutin argues that Judge Aarseth's final comments—his repeated conclusion that the remainder of Malutin's jail time should be imposed—indicate that the judge failed to consider the *Chaney* criteria as a whole, and that he instead made his decision based solely on the criteria of isolation and community condemnation.

But Judge Aarseth did not make these comments in isolation. Earlier in the sentencing hearing, the judge engaged in a lengthy dialog with Malutin's attorney concerning Malutin's treatment record and the proper response to Malutin's decision to reject further probation.

**20.** 477 P.2d 441, 443–44 (Alaska 1970).

**21.** *See DeMario v. State,* 933 P.2d 558, 562 (Alaska App. 1997) (holding that, when a defendant refuses probation, the sentencing judge "[must] not automatically impose all [of the defendant's] previously suspended time" but must carefully evaluate the case under the *Chaney* criteria and then impose a sentence based on the totality of circumstances).

In addition, at the very end of his sentencing remarks, Judge Aarseth expressly addressed the question of whether the entirety of Malutin's remaining jail term should be imposed—and the judge clarified that he had not reflexively imposed all of Malutin's remaining jail time:

> *The Court:* [T]here shouldn't be [any] mistake [as to whether] I've walked into this case [already] knowing that I was simply going to flat-time Mr. Malutin—or [thinking] that that's simply what you do, and there is no other choice. I don't believe that's what I'm doing. I think [the] record [rebuts] that....

We are convinced that Judge Aarseth engaged in an appropriate consideration of the facts of Malutin's case under the *Chaney* criteria (including Malutin's refusal to submit to further probation supervision), and we conclude that his decision to impose the remainder of Malutin's term of imprisonment is not clearly mistaken. We therefore uphold Malutin's sentence.[22]

### Conclusion

The judgement of the superior court is AFFIRMED.

---

**22.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to uphold a sentencing decision unless the sentence is clearly mistaken).