NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter.  Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| RICHARD I. MILLER,<br><br>                  Appellant,<br><br>          v.<br><br>STATE OF ALASKA,<br><br>                  Appellee. | Court of Appeals No. A-11320<br>Trial Court Nos. 3KN-08-568 CR<br>& 3KN-08-740 CR<br><br>O P I N I O N<br><br>No. 2520 — September 16, 2016 |

Appeal from the Superior Court, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances:   Elizabeth D. Friedman, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant.  Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before:  Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Richard I. Miller was found guilty of more than a hundred counts of possessing child pornography, as well as two counts of soliciting other people to tamper with evidence. (Following his arrest, Miller telephoned certain individuals and asked them to delete various materials from his home and business computers, or to remove the computers themselves.)

On appeal, Miller contends that the trial judge committed error by allowing the prosecutor to introduce evidence that Miller possessed a book entitled *The Man They Called a Monster* — an academic study of Clarence Osborne, an Australian man who advocated sexual relations between adults and children, and who professed to have engaged in sex with hundreds of boys. For the reasons explained in this opinion, we conclude that any error in the trial judge's ruling was harmless.

Miller also argues that the trial judge committed plain error by allowing the prosecutor, during the State's summation to the jury, to refer to the fact that Miller possessed additional child pornography for which he was not charged. For the reasons explained in this opinion, we conclude that the prosecutor's reference to this uncharged pornography did not constitute plain error.

Miller asserts that the superior court committed error by assessing a separate "police-training" surcharge for each of Miller's 116 convictions. We agree with Miller, and we direct the superior court to impose only a single surcharge.

Finally, Miller objects to various assertions in his pre-sentence report. For the reasons explained here, we direct the superior court to reconsider Miller's objections to the pre-sentence report.

*The evidence that Miller possessed a copy of <u>The Man They Called a Monster</u>*

Prior to Miller's trial, the judge issued a protective order that barred the State from introducing evidence that Miller possessed literature dealing with pedophilia unless Miller took the stand and disclaimed knowledge of the pornographic images found at his home and business.

At trial, Miller did take the stand and denied possessing the pornographic images. After Miller gave this testimony, the trial judge concluded that the probative force of Miller's possession of literature dealing with pedophilia now outweighed the potential for unfair prejudice posed by this evidence. However, to minimize the potential for unfair prejudice, the judge limited the prosecutor to questioning Miller about only two works: an article entitled *Kolya* and a book entitled *The Man They Called a Monster*. Because the prosecutor could not locate a copy of *Kolya*, the prosecutor only cross-examined Miller about *The Man They Called a Monster*.

This book, *The Man They Called a Monster*, is not a work of pornography. Rather, it was written by an academic; it is a study of an Australian man who advocated sexual relations between adults and children, and who professed to have engaged in sex with hundreds of boys.

The prosecutor suggested that Miller's possession of this book demonstrated Miller's sexual interest in young boys, while Miller asserted that he possessed the book because it was a detailed study of a sociological problem.

The judge's decision to allow the prosecutor to cross-examine Miller about this book is questionable. We discussed a related issue in *Linehan v. State*, 224 P.3d 126, 148 (Alaska App. 2010), where we explained that courts are normally quite cautious about allowing the government to introduce evidence of a defendant's tastes in literature

or cinema when this evidence is offered to prove that the defendant likely committed the types of crimes or misdeeds portrayed in those books or movies.

Here, the book that Miller possessed was not a work of child pornography. It was an academic examination of a man who advocated and engaged in pedophilia. The fact that Miller possessed a copy of this book had only marginal probative value on the question of whether Miller himself would engage in such criminal activities.

(See our discussion of the related point in *Linehan*: "[M]any law-abiding people are drawn to characters in literature or in the cinema who are villainous or roguish ... even though they would not dream of engaging in the same crimes or misdeeds." 224 P.3d at 148.)

Nevertheless, we conclude that any error was harmless. It is true that, during summation, the prosecutor argued briefly that Miller's possession of this book showed that he was sexually interested in children. But the State's case rested primarily on the dozens of pornographic images found on the computer hard drive in Miller's locker at work, and on the child pornographic CDs that were found in Miller's dresser, and on Miller's telephone calls from the jail asking people to delete computer files or remove computers from his home and business.

Given the other evidence in this case, we conclude that the admission of evidence that Miller possessed a copy of *The Man They Called a Monster* did not appreciably affect the jury's decision. Accordingly, even if it was error to allow the prosecutor to introduce this evidence, the error was harmless. [1]

---

[1] *See Love v. State*, 457 P.2d 622, 634 (Alaska 1969) (holding that, for instances of non-constitutional error, the test for harmlessness is whether the appellate court "can fairly say that the error did not appreciably affect the jury's verdict").

*The prosecutor's comment, during summation, that the police found child pornography on a computer — pornography that Miller was not charged with possessing*

During Miller's trial, one of the police witnesses testified (with no objection from the defense) that, after Miller made his telephone calls from jail asking people to delete or hide evidence, the police obtained a second search warrant. During the execution of this second warrant, the police found additional child pornography on a computer. However, the State never charged Miller with possessing this additional child pornography.

During her rebuttal summation, the prosecutor listed for the jury all of the places where child pornography was found at Miller's home and business, and the prosecutor mentioned the pornography that was found on the computer during the execution of the second search warrant.

Although Miller's attorney had not objected when the police officer gave this testimony, the defense attorney objected to the prosecutor's statement in summation. The defense attorney pointed out (correctly) that Miller had never been charged with possessing any of the pornography found on this computer, and the attorney asked the judge to expressly instruct the jury that Miller was not charged with possessing this pornography.

Instead of giving a limiting or clarifying instruction, the trial judge asked the prosecutor to clarify this point when she resumed her summation. The prosecutor then told the jurors:

> Ladies and gentlemen, the defendant is charged for [possessing] the pornography that was found on the [separate] hard drive ... and on those CDs that were found in the dresser. But you certainly heard testimony about other

computers of his that were searched, and that child pornography was found on, although he was not charged for that other child pornography.

Miller's attorney was apparently satisfied with the prosecutor's clarification, because the defense attorney did not renew his objection, nor did the defense attorney ask the trial judge for a supplemental instruction on this matter.

But now, on appeal, Miller raises a *different* objection to the prosecutor's comments about the child pornography found on the other computer. Miller now contends that the prosecutor mischaracterized the trial testimony when the prosecutor asserted that the police found additional child pornography on a computer in Miller's *home*. Miller asserts that the computer in question was actually located at Miller's business — and he argues that this distinction is an important one, because it is more likely that other people might have had access to Miller's business computer.

Because Miller's attorney never raised this objection in the trial court, he must now show plain error. We have examined the record of Miller's trial, and we find no plain error. In fact, we find no error at all — because, contrary to Miller's claim on appeal, the police officer clearly testified that the computer at issue was searched under the authority of the second search warrant, and that this second search warrant was for Miller's home, not his business.

*The superior court should not have imposed a separate surcharge for each of Miller's 116 convictions*

AS 12.55.039(a)(1) declares that when a defendant is convicted of a felony, the court must order the defendant to pay a $100 "surcharge" in addition to any fine or other monetary penalty prescribed by law for the offense. Similarly, under

AS 12.55.039(a)(2)-(3), when a defendant is convicted of a misdemeanor, the court must impose a surcharge of either $75 (if the conviction is for driving under the influence or breath-test refusal) or $50 (for all other misdemeanors).

The superior court concluded that this statute required the court to order Miller to pay a separate $100 surcharge for each of his 114 felony convictions, as well as a separate $50 surcharge for each of his two misdemeanor convictions. Thus, Miller was ordered to pay surcharges totaling $11,500.

The parties refer to these surcharges as "police training surcharges", but AS 12.55.039 does not use this phrase. The statute simply describes this monetary penalty as a "surcharge", and subsection (d) of the statute expressly provides that all money collected under the statute "shall be deposited into the general fund and accounted for under AS 37.05.142" — *i.e.*, in the same manner as normal fines or any other program receipt. [2]

It is true that another statute, AS 18.65.225, authorizes the legislature to appropriate money to fund statewide police training in an amount *equal* to the estimated income that will be collected under AS 12.55.039 plus the income collected under AS 28.05.151 (fines and forfeited bail from state traffic offenses) and AS 29.25.074 (surcharges collected by municipalities for violation of their local ordinances).

But AS 18.65.225 does not *require* the legislature to spend this money for police training. Indeed, Article IX, Section 7 of the Alaska Constitution forbids the legislature from dedicating state revenues to any special purpose, except for the percentage of mineral lease and royalty revenue that must be placed in the Permanent Fund, and except as required by the federal government for state participation in federal

---

[2]   *See* AS 12.55.035(g).

programs. The final sentence of AS 18.65.225 expressly acknowledges this constitutional prohibition, by declaring, "Nothing in this [statute] creates a dedicated fund."

In other words, even though AS 12.55.039 refers to the money as a "surcharge", this surcharge is the legal equivalent of a mandatory additional fine.

The question is whether the legislature intended this surcharge to be levied once for each criminal case, or whether the legislature intended to impose a separate surcharge for each individual count that the defendant was convicted of. In Miller's case, the difference is dramatic: he will either be charged $100, or he will be charged $11,500.

The State takes the position that the superior court's ruling was correct — that Miller is required to pay a separate surcharge for each of his 116 convictions.

To support this interpretation, the State notes that AS 12.55.039(a) declares that a defendant who is "convicted of *a* felony" shall be assessed a $100 surcharge. The State argues that, in this context, when the legislature speaks of imposing a surcharge on defendants "convicted of a felony", this is equivalent to saying that defendants will be assessed a surcharge for "every felony". The State notes that if revenue generation was the legislature's aim, the statute would better fulfill this purpose — *i.e.*, it would generate more revenue — if we construe it to require a separate surcharge for each individual count.

The State also points out that AS 12.55.039 is worded differently from a sister provision, AS 12.55.041, which imposes a "correctional facility" surcharge on defendants who are convicted of any crime under Alaska law and who have been jailed at some point during the proceedings.

Subsection (b) of the correctional surcharge statute explicitly declares that a court "shall impose a single surcharge ... on a defendant being sentenced for one or more crimes in a single judgment." The statute further declares that this surcharge is

$100 "if the judgment includes a sentence for a felony", but only $50 "if the judgment does not include a sentence for a felony."

Based on the difference in the wording of these two statutes, the State argues that if the legislature had wanted to impose only one surcharge under AS 12.55.039, no matter how many convictions were entered against a defendant, the legislature could easily have worded AS 12.55.039 the way it worded AS 12.55.041.

The State's argument is facially plausible, but it leads to results that are questionable.

As the State notes in its brief, the legislative history of AS 12.55.039 shows that it was intended to generate revenue that might be used to defray the State's cost of training law enforcement officers. The legislature reasoned that when people break the law, this creates "increased needs" to train law enforcement officers and corrections officers. *See* the Minutes of the House Judiciary Committee for January 28, 1998 (the committee's discussion of House Bill 261, the 1998 amendment to the statute). As one member of the committee explained, "Those who are creating ... the need for training will … have a surcharge on their fines that will go towards the Alaska police training fund."

(*Sic*: As we have explained, AS 18.65.225 expressly declares that the surcharges assessed under AS 12.55.039 are *not* earmarked for police training. Rather, these surcharges simply put more money into the general fund, and the legislature may budget this money for police training if it wishes.)

But the fact that the legislature wished to generate revenue to fund police training does not directly answer the question that confronts us now: whether one surcharge should be assessed per criminal case as opposed to a separate surcharge for every count that the defendant is convicted of.

There is no obvious correlation between the number of traffic citations and criminal cases that are filed in Alaska and the amount of training that Alaska law enforcement officers will need. There is even less of a connection between the number of counts that any particular defendant is convicted of and any increased need for law enforcement training.

Miller's case vividly illustrates this lack of connection. Miller possessed over a hundred examples of child pornography, and the district attorney's office charged him with a separate count for each one. But each additional piece of child pornography had essentially no bearing on the additional amount of law enforcement training — if any — that was necessitated by, or that could be attributed to, Miller's case. And yet, under the State's interpretation of AS 12.55.039, Miller would be liable for a separate surcharge for each separate example of child pornography — more than a hundred surcharges.

A court should not construe statutes in a way "that leads to unfair or incongruous results",[3] or in a manner which yields results that are inexplicably draconian or that have no discernible purpose.[4] This principle causes us to reject the superior court's interpretation of the statute, and to hold instead that only one surcharge should be imposed under AS 12.55.039 in any one criminal case.

Thus, in Miller's case, the superior court should have assessed a surcharge of $100.

---

[3] *Malutin v. State*, 198 P.3d 1177, 1185 (Alaska App. 2009).

[4] *See Vigue v. State*, 987 P.2d 204, 210-11 (Alaska App. 1999); *Millman v. State*, 841 P.2d 190, 195 (Alaska App. 1992).

*Miller's objections to the pre-sentence report*

During the sentencing proceedings in this case, Miller took issue with several of the assertions in the pre-sentence report — assertions portraying him as a pedophile who had sexually abused several boys. These assertions were based on hearsay. Miller offered his own testimonial denials of these accusations, and some of the boys mentioned in the pre-sentence report likewise denied that any sexual abuse had taken place. The superior court nevertheless concluded that these accusations were sufficiently "verified" to be included in the pre-sentence report.

In *Nukapigak v. State*, 562 P.2d 697, 701 (Alaska 1977), our supreme court held that sentencing judges are entitled to consider hearsay allegations of past bad behavior, provided that the information is verified and the defendant is given the opportunity to deny it or present contrary evidence of his own. The supreme court defined "verified" as meaning "corroborated or substantiated by supporting data or information". *Id.* at 701 n. 2.

However, a sentencing judge is not allowed to rely on hearsay allegations if the defendant offers a testimonial denial of the allegations. *See*, *e.g.*, *Garland v. State*, 172 P.3d 827, 829 (Alaska App. 2007); *Evans v. State*, 23 P.3d 650, 652 (Alaska App. 2001); *Hamilton v. State*, 771 P.2d 1358, 1361-62 (Alaska App. 1989).

In Miller's case, the State concedes that the superior court acted improperly in at least two instances by relying on hearsay allegations of misconduct after Miller had offered testimonial denials.

Given the State's concession, we conclude that, rather than delving into the numerous challenges that Miller raises to the pre-sentence report, it is better to simply remand this matter to the superior court — so that the superior court can reconsider Miller's various challenges to the contents of the report.

*Conclusion*

We AFFIRM Miller's convictions. We REVERSE the superior court's ruling on the number of surcharges to be imposed on Miller under AS 12.55.039; we direct the court to amend the judgement to impose one surcharge (a felony surcharge of $100). And we direct the superior court to reconsider Miller's various challenges to the contents of the pre-sentence report.

The superior court shall make its rulings regarding the pre-sentence report within 60 days after this opinion is issued.

If Miller wishes to challenge the superior court's rulings on reconsideration, he should file a supplemental brief addressing these matters within 60 days after the superior court issues its rulings. The State shall then have 30 days to file a responding supplemental brief. (These time limits may be expanded for good cause.)

If Miller does not challenge the superior court's rulings, he shall promptly notify this Court, and we will close this appeal.