NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific*</u> <u>*Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JAMES PATRICK TANNER,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-12617<br>Trial Court No. 1KE-96-656 CR<br><br>O P I N I O N<br><br>No. 2628 — December 14, 2018 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Lars Johnson (opening brief) and Emily Jura (reply brief), Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Kenneth M. Rosenstein, Anchorage, under contract with the Office of Criminal Appeals, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER, writing for the Court.
Judge ALLARD, concurring.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In 1997, James Patrick Tanner pleaded guilty to two counts of second-degree sexual abuse of a minor. He received a composite sentence of 20 years' imprisonment with 10 years suspended, and he was placed on probation for 10 years following his release from prison. [1]

The current appeal arises from the fact that the superior court later revoked Tanner's probation, and Tanner was released on bail pending his appeal of the superior court's decision. [2] When the superior court granted Tanner's request to be released on bail, the court imposed a requirement of electronic monitoring.

Tanner's contract with the electronic monitoring company generally required him to remain at home, but the contract listed various exceptions to this requirement — various reasons why Tanner would be allowed to leave his home. One of the listed reasons was grocery shopping.

After the parties discussed the terms of this contract with the superior court, the court adopted the terms of the contract as conditions of Tanner's bail release.

Later, while Tanner was on bail release, the State again petitioned the superior court to revoke Tanner's probation (for a new violation). Following a hearing, the superior court found that Tanner had, in fact, violated his probation. Based on this new violation, the court imposed 90 days of Tanner's previously suspended jail time.

Tanner later filed a motion seeking credit against this sentence for the 212 days that he had spent on electronic monitoring.

---

[1]   *See Tanner v. State*, unpublished, 1997 WL 796501 (Alaska App. 1997) (sentence appeal); *Tanner v. State*, unpublished, 2000 WL 1593662 (Alaska App. 2000) (appeal of denial of post-conviction relief).

[2]   This Court ultimately affirmed the superior court's decision; *see Tanner v. State*, unpublished, 2016 WL 5335672 (Alaska App. 2016).

The statute that governed Tanner's credit for electronic monitoring, AS 12.55.027(d), stated that a defendant could receive this credit only if "the court imposes restrictions on the [defendant's] freedom of movement and behavior while under the electronic monitoring program", and only if these restrictions include "requiring the [defendant] to be confined to a residence except for a (1) court appearance; (2) meeting with counsel; or (3) ... employment, attending educational or vocational training, performing community volunteer work, or attending a rehabilitative activity or medical appointment."

The superior court noted that, because the conditions of Tanner's electronic monitoring allowed him to leave his home to go grocery shopping, it appeared that Tanner's electronic monitoring was not sufficiently restrictive to meet the requirements of the statute. In response, Tanner argued that grocery shopping was an essential activity, and thus the statute should be construed to implicitly allow defendants to leave their residence to go grocery shopping. In the alternative, Tanner argued that grocery shopping qualified as a "rehabilitative activity" under the statute.

After hearing argument on these matters, the superior court ultimately rejected both of Tanner's arguments: the court ruled that AS 12.55.027(d) did not contain an implicit exception for grocery shopping, and the court ruled that grocery shopping did not qualify as a "rehabilitative activity" for purposes of AS 12.55.027(d). Thus, the court concluded, Tanner was not entitled to credit against his sentence for the time he spent on electronic monitoring.

Tanner now appeals the superior court's ruling.

Tanner argues that, unless AS 12.55.027(d) is interpreted as implicitly allowing defendants to leave home to go grocery shopping, the statute "leads to absurd results".

We agree with Tanner that life is more complicated and inconvenient for defendants who cannot leave their home to do their own grocery shopping, and we further agree that it would be reasonable for the legislature to expand the scope of the statute to allow defendants to occasionally leave their homes to buy groceries.

But the legislature could validly draw a distinction between grocery shopping and the appointments and activities expressly listed in the statute.

As we have explained, AS 12.55.027(d) states that a court cannot give a defendant credit for time spent on electronic monitoring unless the defendant's absences from home are limited to:

- court appearances,
- meetings with counsel,
- employment, or educational or vocational training,
- community volunteer work,
- rehabilitative activities, and
- medical appointments.

The factor that distinguishes these activities from "grocery shopping" is that, when a defendant leaves home to engage in the activities listed in the statute, someone will be expecting the defendant to show up at a particular place, and at a particular time. Thus, if the defendant does not show up, or if the defendant does not show up on time, someone will take note.

For this reason, we conclude that it was not absurd for the legislature to omit grocery shopping from the statutory list of a defendant's allowed absences from their home.

This leaves Tanner's argument that grocery shopping constitutes a "rehabilitative activity" for purposes of the statute.

The pertinent dictionary definition of "rehabilitate" is "to prepare ... an inmate ... for useful employment or successful integration into society by counseling, training, etc."[3] Most people would not consider grocery shopping to constitute a form of rehabilitative "counseling" or "training".

We note, as well, that the statute refers to this authorized purpose for leaving home as "*attending* a rehabilitative activity". The legislature's use of the word "attend" is a further indication that the legislature was referring to defendants who enroll in scheduled sessions of counseling or training — as opposed to defendants who leave their homes for an unspecified destination, and for an unspecified length of time, to go shopping for groceries.

It is true, as Tanner notes in his brief, that when the legislature was formulating the current version of AS 12.55.027(d), they spent a considerable amount of time discussing the equivalent electronic monitoring program run by the Department of Corrections — a program under which convicted prisoners are released on electronic monitoring under modified house arrest, rather than being housed in correctional centers. Under the Department of Corrections' electronic monitoring program, prisoners get weekly passes that authorize them to leave their homes to handle personal errands, such as grocery shopping.

But despite this legislative discussion, the statute that the legislature ultimately enacted is more restrictive than the Department of Corrections' electronic monitoring program. AS 12.55.027(d) specifies the limited circumstances in which a defendant may be absent from their home and still get sentencing credit for the time they spend on electronic monitoring. This limited list does not include passes that authorize a defendant to leave their home to run personal errands.

---

[3]  *Webster's New World College Dictionary* (Fourth Edition, 2004), p. 1208.

For these reasons, we reject Tanner's contention that grocery shopping constitutes a "rehabilitative activity" for purposes of AS 12.55.027(d).

The judgement of the superior court is AFFIRMED.

Judge ALLARD, concurring.

I agree with the majority decision that Tanner's electronic monitoring program was insufficiently restrictive to qualify for credit under AS 12.55.027(d). I write separately only to make clear that, in my view, our decision is limited to the facts presented in this case and that a defendant whose monitoring program includes very limited and highly circumscribed passes specifically to obtain groceries (or other essential items of daily living such as medication) should not necessarily suffer the same disqualification.

In its briefing, the State concedes that "[t]he legislature probably intended that defendants on electronic monitoring receive credit against their sentences when they receive passes to go grocery shopping." The State bases this concession on the underlying purpose of AS 12.55.027(d), which is "to facilitat[e] independent living" and help defendants get "back on track" by allowing them to "gain access to community-based treatment, maintain employment, access diverse medical treatment, perform community service work, and begin the process of reintegration."[1] The State nevertheless argues that passes for grocery shopping are prohibited because they are not specifically enumerated in the statute.

---

[1]    Minutes of House Judiciary Comm., House Bill 15, statement of Representative Tammie Wilson (Feb. 20, 2015 at 1:56:23 p.m.); Minutes of House Judiciary Comm., House Bill 15, statement of Representative Tammie Wilson (Mar. 18, 2015 at 1:08:07 p.m.) (goal of electronic monitoring is to allow "defendants to keep their jobs, and receive treatment, while awaiting trial to help them get back on track").

But our underlying goal when we construe a statute is to determine legislative intent and, if possible, to implement that intent.[2] We are also required to construe statutes to avoid absurd results.[3] Although AS 12.55.027(d) does not directly refer to grocery shopping, the statute does refer to passes for "attending a rehabilitative activity or medical appointment." Presumably a pass to attend a medical appointment would also include a pass to obtain the medication prescribed at such an appointment. And if a person is permitted to go to a pharmacy to obtain medication, it is not clear why the person should not be permitted to go to the grocery store to obtain the nutritional sustenance required to perform all of the other rehabilitative activities contemplated by the statute.

The majority opinion rejects the notion that grocery shopping can constitute a "rehabilitative activity" on the ground that a person does not "attend" such an event. But I see no reason why a limited pass to go grocery shopping cannot be structured to ensure the same sort of accountability and oversight present in other types of rehabilitative activities.

However, here, the record indicates that Tanner was permitted essentially four hours of unregulated passes a week under the terms of his electronic monitoring contract. Although the parties repeatedly referred to this free time as time set aside for "grocery shopping," the reality is that there were very few restrictions on Tanner's use

---

[2] *Brown v. State*, 404 P.3d 191, 193 (Alaska App. 2017); *Y.J. v. State*, 130 P.3d 954, 959 (Alaska App. 2006).

[3] *Miller v. State*, 382 P.3d 1192, 1197 (Alaska App. 2016) ("A court should not construe statutes in a way that leads to unfair or incongruous results, or in a manner which yields results that are inexplicably draconian or that have no discernible purpose.") (internal citations omitted); *Williams v. State*, 853 P.2d 537, 538 (Alaska App. 1993) ("[A] court is obliged to avoid construing statutes in a way that leads to patently absurd results or to defeat of the obvious legislative purpose behind the statute.") (internal citations omitted).

of this time. Indeed, Tanner's personal log indicates that he spent a significant amount of this time at a car repair shop with multiple visits on multiple days to this same shop, apparently due to recurring mechanical problems with his car.

Given the record before us, I agree with the majority that Tanner is not entitled to credit against his sentence under AS 12.55.027(d), but I also believe that our decision should be read narrowly and limited to the specific facts presented here.