Judge MANNHEIMER, writing for the Court.
In 1997, James Patrick Tanner pleaded guilty to two counts of second-degree sexual abuse of a minor. He received a composite sentence of 20 years' imprisonment with 10 years suspended, and he was placed on probation for 10 years following his release from prison.[1]
The current appeal arises from the fact that the superior court later revoked Tanner's probation, and Tanner was released on bail pending his appeal of the superior court's decision.[2] When the superior court granted Tanner's request to be released on bail, the court imposed a requirement of electronic monitoring.
Tanner's contract with the electronic monitoring company generally required him to remain at home, but the contract listed various exceptions to this requirement - various reasons why Tanner would be allowed to leave his home. One of the listed reasons was grocery shopping.
After the parties discussed the terms of this contract with the superior court, the court adopted the terms of the contract as conditions of Tanner's bail release.
Later, while Tanner was on bail release, the State again petitioned the superior court to revoke Tanner's probation (for a new violation). Following a hearing, the superior court found that Tanner had, in fact, violated his probation. Based on this new violation, the court imposed 90 days of Tanner's previously suspended jail time.
Tanner later filed a motion seeking credit against this sentence for the 212 days that he had spent on electronic monitoring.
The statute that governed Tanner's credit for electronic monitoring, AS 12.55.027(d), stated that a defendant could receive this credit only if "the court imposes restrictions *1063 on the [defendant's] freedom of movement and behavior while under the electronic monitoring program", and only if these restrictions include "requiring the [defendant] to be confined to a residence except for a (1) court appearance; (2) meeting with counsel; or (3) ... employment, attending educational or vocational training, performing community volunteer work, or attending a rehabilitative activity or medical appointment."
The superior court noted that, because the conditions of Tanner's electronic monitoring allowed him to leave his home to go grocery shopping, it appeared that Tanner's electronic monitoring was not sufficiently restrictive to meet the requirements of the statute. In response, Tanner argued that grocery shopping was an essential activity, and thus the statute should be construed to implicitly allow defendants to leave their residence to go grocery shopping. In the alternative, Tanner argued that grocery shopping qualified as a "rehabilitative activity" under the statute.
After hearing argument on these matters, the superior court ultimately rejected both of Tanner's arguments: the court ruled that AS 12.55.027(d) did not contain an implicit exception for grocery shopping, and the court ruled that grocery shopping did not qualify as a "rehabilitative activity" for purposes of AS 12.55.027(d). Thus, the court concluded, Tanner was not entitled to credit against his sentence for the time he spent on electronic monitoring.
Tanner now appeals the superior court's ruling.
Tanner argues that, unless AS 12.55.027(d) is interpreted as implicitly allowing defendants to leave home to go grocery shopping, the statute "leads to absurd results".
We agree with Tanner that life is more complicated and inconvenient for defendants who cannot leave their home to do their own grocery shopping, and we further agree that it would be reasonable for the legislature to expand the scope of the statute to allow defendants to occasionally leave their homes to buy groceries.
But the legislature could validly draw a distinction between grocery shopping and the appointments and activities expressly listed in the statute.
As we have explained, AS 12.55.027(d) states that a court cannot give a defendant credit for time spent on electronic monitoring unless the defendant's absences from home are limited to:
• court appearances,
• meetings with counsel,
• employment, or educational or vocational training,
• community volunteer work,
• rehabilitative activities, and
• medical appointments.
The factor that distinguishes these activities from "grocery shopping" is that, when a defendant leaves home to engage in the activities listed in the statute, someone will be expecting the defendant to show up at a particular place, and at a particular time. Thus, if the defendant does not show up, or if the defendant does not show up on time, someone will take note.
For this reason, we conclude that it was not absurd for the legislature to omit grocery shopping from the statutory list of a defendant's allowed absences from their home.
This leaves Tanner's argument that grocery shopping constitutes a "rehabilitative activity" for purposes of the statute.
The pertinent dictionary definition of "rehabilitate" is "to prepare ... an inmate ... for useful employment or successful integration into society by counseling, training, etc."[3] Most people would not consider grocery shopping to constitute a form of rehabilitative "counseling" or "training".
We note, as well, that the statute refers to this authorized purpose for leaving home as "attending a rehabilitative activity". The legislature's use of the word "attend" is a further indication that the legislature was referring to defendants who enroll in scheduled sessions of counseling or training - as opposed to defendants who leave their homes for an unspecified destination, and for an *1064 unspecified length of time, to go shopping for groceries.
It is true, as Tanner notes in his brief, that when the legislature was formulating the current version of AS 12.55.027(d), they spent a considerable amount of time discussing the equivalent electronic monitoring program run by the Department of Corrections - a program under which convicted prisoners are released on electronic monitoring under modified house arrest, rather than being housed in correctional centers. Under the Department of Corrections' electronic monitoring program, prisoners get weekly passes that authorize them to leave their homes to handle personal errands, such as grocery shopping.
But despite this legislative discussion, the statute that the legislature ultimately enacted is more restrictive than the Department of Corrections' electronic monitoring program. AS 12.55.027(d) specifies the limited circumstances in which a defendant may be absent from their home and still get sentencing credit for the time they spend on electronic monitoring. This limited list does not include passes that authorize a defendant to leave their home to run personal errands.
For these reasons, we reject Tanner's contention that grocery shopping constitutes a "rehabilitative activity" for purposes of AS 12.55.027(d).
The judgement of the superior court is AFFIRMED.

See Tanner v. State , unpublished, 1997 WL 796501 (Alaska App. 1997) (sentence appeal); Tanner v. State , unpublished, 2000 WL 1593662 (Alaska App. 2000) (appeal of denial of post-conviction relief).

This Court ultimately affirmed the superior court's decision; see Tanner v. State , unpublished, 2016 WL 5335672 (Alaska App. 2016).

Webster's New World College Dictionary (Fourth Edition, 2004), p. 1208.