NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DON L. BAKER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13831
Trial Court No. 4FA-20-02722 CR

O P I N I O N

No. 2762 — October 20, 2023

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Earl A. Peterson, Judge.

Appearances: Paul E. Malin, Attorney at Law, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Kenneth M. Rosenstein, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge HARBISON, writing for the Court.
Judge ALLARD, concurring.
Judge TERRELL, dissenting.

Don L. Baker pleaded guilty to felony failure to stop at the direction of a police officer.[1] Prior to remanding to serve his jail time, Baker spent 165 days on bail release, supervised by electronic monitoring. Relying on AS 12.55.027, Baker later asked the superior court to grant him credit toward his sentence for the time he spent on electronic monitoring. The court concluded that, because Baker's bail order allowed him to leave his residence in order to go grocery shopping, he did not qualify for credit under subsection (d) of this statute.

Baker appeals, contending the superior court erred in denying this motion. For the reasons explained in this opinion, we conclude that the superior court applied an incorrect legal analysis, and we remand this case to the superior court for further proceedings consistent with this opinion.

*Background facts and proceedings*

Baker was arrested for felony driving under the influence, felony refusal to submit to a chemical test, and felony failure to stop at the direction of a police officer. At his arraignment, he asked to be released on the Alaska Department of Corrections' Pretrial Enforcement Division (PED) electronic monitoring program. Although Baker did not request that his electronic monitoring program include passes for grocery shopping, the court *sua sponte* ordered these passes after it learned that Baker lived alone and relied on food stamps.

The bail order imposing electronic monitoring as a condition of release stated, in relevant part:

> The defendant is ordered to supervision by a Pretrial Enforcement Division (PED) officer during the pretrial period as provided by AS 33.07.

> Electronic monitoring ordered. Defendant to remain in custody until monitor is attached.

---

[1]    AS 28.35.182(a)(1).

Curfew, substance monitoring and location restrictions as ordered below.

EM monitoring. Curfew, substance monitoring, and location restrictions. May leave for medical appointments, to meet with attorney, and *for grocery shopping.* [Emphasis added.] Defendant is permitted to work for Dynamic Painting between the hours of 6:30 am and 5:30 pm and travel to different work sites with proper notice of work site addresses to PED. Defendant is to be transported by Bob Mason or another employee of Dynamic painting to and from work.

Defendant is not to drive anything with an engine himself.

Baker later pleaded guilty to one count of felony failure to stop at the direction of a police officer. Following the change of plea hearing, Baker was given a remand date. He remained out of custody without incident until then, ultimately spending a total of approximately 165 days on electronic monitoring.

Baker filed a motion for sentencing credit under AS 12.55.027(d) for the time he had spent on PED electronic monitoring while on bail release. Baker acknowledged that this statute allows defendants to obtain credit against their sentences for time spent on electronic monitoring if they are confined to their residence and permitted to leave only in order to participate in certain enumerated activities.[2] He asserted that although "grocery shopping" is not specifically listed in the statute, it nevertheless is a permissible "rehabilitative activity."

The State opposed Baker's motion, arguing that this Court had concluded in *Tanner v. State* that grocery shopping was not a rehabilitative activity.[3]

---

[2] These activities are: court appearances, meetings with counsel, employment, educational or vocational training, community volunteer work, medical appointments, and rehabilitative activities. AS 12.55.027(d).

[3] *Tanner v. State*, 436 P.3d 1061, 1063-64 (Alaska App. 2018).

The court held an evidentiary hearing on the motion for sentencing credit. At the hearing, PED Officer Tony Gross testified that Baker had no violations while on PED electronic monitoring. Gross testified that in order for Baker to leave his residence to go grocery shopping, he first had to call into the PED office to obtain permission to go to a specific store for a set amount of time. Gross testified that they "never had any violations of him exceeding his time frames." On average, Baker's grocery shopping trips took "about an hour." Gross also testified that, because Baker was on GPS monitoring, Gross was able to review Baker's movements to see if his travel route deviated from what was necessary to travel to and from approved activities. According to Gross's records, there were no deviations. Gross did not recall how often Baker went grocery shopping.

After hearing the evidence, the superior court denied Baker's motion for sentencing credit. The court found that AS 12.55.027(d) and *Tanner v. State* clearly exclude grocery shopping from the exception carved out for rehabilitative activities.

This appeal followed.

*Why we conclude that a remand is necessary*

In 2015, the Alaska legislature amended AS 12.55.027(d) to authorize trial courts to grant certain defendants credit against their sentences for time that they spend on electronic monitoring while on bail release.[4] To qualify for sentencing credit under this provision, a defendant must be on electronic monitoring and must be confined to their residence except for (1) court appearances; (2) meetings with counsel; or (3) "period[s] during which the person is at a location ordered by the court for the purposes of employment, attending educational or vocational training, performing

---

[4]   2015 SLA ch. 20, § 2.

community volunteer work, or attending a rehabilitative activity or medical appointment."[5]

In *Tanner v. State*, the defendant claimed that, although grocery shopping was not one of the enumerated exceptions to home confinement set out in the statute, it was implicitly included because it would be impossible for a person to comply with the other requirements of an electronic monitoring program if they did not have some means to gain sustenance.[6] He also asserted that, as a matter of law, passes to go grocery shopping constituted a "rehabilitative activity" under AS 12.55.027(d).[7]

A majority of this Court rejected these arguments. We reasoned that it was not necessarily absurd for the legislature to exclude grocery shopping from the list of permitted activities and accordingly it was not implicitly included in the activities enumerated in the statute.[8] We explained that this was because the enumerated activities (employment, training, meetings with counsel, medical appointments, volunteer work, etc.) shared an attribute that grocery shopping did not have — that is, they required the defendant to show up at a particular place and at a particular time and they involved people who would take note if the defendant failed to show up on time.[9]

We also rejected Tanner's argument that his grocery shopping passes qualified as "attending a rehabilitative activity" as a matter of law. We noted that "[t]he legislature's use of the word 'attend'" suggested "that the legislature was referring to defendants who enroll in scheduled sessions of counseling or training" rather than defendants, like Tanner, who were allowed to "leave their homes for an unspecified

---

[5]   AS 12.55.027(d)(1)-(3).

[6]   *Tanner*, 436 P.3d at 1063.

[7]   *Id.*

[8]   *Id.* at 1063-64.

[9]   *Id.*

destination, and for an unspecified length of time, to go shopping for groceries."[10] We thus rejected Tanner's argument that grocery shopping is necessarily a rehabilitative activity.

In the present case, although the superior court conducted an evidentiary hearing, its denial of Baker's request for sentencing credit was primarily based on its understanding that AS 12.55.027 and *Tanner v. State* clearly state that grocery shopping does not fit within the exception carved out for a rehabilitative activity.

But our holding in *Tanner* was limited to the question of whether grocery shopping qualifies as a rehabilitative activity as a matter of law. As Judge Allard noted in her concurring opinion, grocery shopping may be considered a rehabilitative activity under some factual circumstances.[11]

Thus, *Tanner* should not be read to suggest that trial courts are barred from giving sentencing credit to defendants after allowing defendants to leave their house arrest to go grocery shopping. Instead, *Tanner* stands for the principle that grocery shopping is not a rehabilitative activity *as a matter of law — i.e.*, grocery shopping is not *always* a rehabilitative activity. However, there may be cases in which the trial court would consider grocery shopping to be an activity that would assist in the defendant's rehabilitation. As we are about to explain, AS 12.55.027 vests the trial court with considerable discretion in determining what activities are "rehabilitative" for a particular defendant.

The question of whether grocery shopping can be a rehabilitative activity under AS 12.55.027(d) is a question of statutory interpretation that must be answered by applying "reason, practicality, and common sense" while "considering the meaning

---

[10]  *Id.*

[11]  *Id.* at 1064-65 (Allard, J., concurring).

of [the statute's] language, its legislative history, and its purpose."[12] Thus, "we look both to the wording of the statute and to its legislative history to see if we can ascertain the legislature's intent when it passed the statute."[13]

There is nothing in the plain language of AS 12.55.027(d) that would prohibit a court from designating grocery shopping to be a rehabilitative activity. As we explained in *Tanner*, "rehabilitation" refers to preparing an inmate for, *inter alia*, useful employment or successful reintegration into society.[14] We can envision situations in which grocery shopping could be part of such preparation, and thus would be included within the statute's plain meaning of rehabilitative activity.

Acquiring the skills needed for self-sufficiency is an important part of a defendant's transition to becoming a productive citizen. Offenders face many challenges at the time of their release from incarceration, including finding suitable accommodations with limited means, managing financially with little or no initial savings, obtaining a range of everyday necessities, and accessing services and support for their specific needs. Accordingly, an offender who, for example, has limited independent living skills or experiences, is in recovery from alcohol addiction, is receiving government benefits such as food stamps, does not have a reliable source of transportation, or works irregular hours may experience considerable challenges obtaining their groceries. A court could reasonably determine that grocery shopping is a rehabilitative activity for such a defendant.

The statute's legislative history supports this understanding of its plain language. As we have explained, the legislature amended AS 12.55.027(d) in 2015. The

---

[12] *Wilson v. State, Dep't of Corr.*, 127 P.3d 826, 829 (Alaska 2006).

[13] *State v. Thompson*, 425 P.3d 166, 169 (Alaska App. 2018); *see also Y.J. v. State*, 130 P.3d 954, 959 (Alaska App. 2006) (explaining that the court's role is "to ascertain the legislature's intent, and then to construe the statute so as to implement that intent").

[14] *Tanner*, 436 P.3d at 1063.

purpose of this legislation was twofold. First, the legislation was intended to promote rehabilitation by helping qualifying defendants "gain access to community-based treatment, maintain employment, access diverse medical treatment, perform community service work, and begin the process of reintegration" while under the strict supervision of an electronic monitoring program.[15] Second, the legislation was intended to provide cost-saving benefits to the State of Alaska by granting jail-time credit to defendants who were able to successfully complete their electronic monitoring programs without any violations or new crimes.[16]

We note that an earlier draft of AS 12.55.027(d) enumerated "counseling" rather than "a rehabilitative activity" as an approved reason for a defendant to leave their house arrest.[17] According to Representative Tammie Wilson, who sponsored the legislation, this term was changed in order to "give more tools to the court to determine what helps [a] person who is in pretrial."[18] She explained that the bill would require "not just the court appearances, but actually . . . doing something to get your life back on track," and that judges could "use the bill and say, 'You need to do these other things as well because we want to make sure that you don't come back.'"[19]

For these reasons, we conclude that the legislature intended to give trial courts broad discretion to determine what would help offenders transition into productive members of society — *i.e.*, what to designate as rehabilitative activities —

---

[15] Audio of House Judiciary Comm., House Bill 15, Sponsor Statement of Representative Tammie Wilson, 1:57:45-1:58:51 p.m. (Feb. 20, 2015).

[16] *Id.*

[17] H.B. 15, 29th Leg., 1st Sess. (as introduced, Mar. 18, 2015).

[18] Audio of House Judiciary Comm., House Bill 15, testimony of Representative Tammie Wilson, 1:05:23-1:05:30 p.m. (Mar. 23, 2015).

[19] *Id.* at 1:44:07-1:44:39 p.m.

and to allow them to do these things while on house arrest without forfeiting sentencing credit. Thus, although grocery shopping is not a rehabilitative activity as a matter of law, trial judges have the discretion to designate it as a rehabilitative activity for a particular defendant, depending on the defendant's circumstances and the circumstances of their offense.

In this case, Baker was charged with felony DUI, felony refusal to submit to a chemical test, and felony failure to stop. When releasing him onto house arrest with PED electronic monitoring, the court *sua sponte* included passes for grocery shopping after it learned that Baker lived alone and relied on food stamps. Under these circumstances, the court could reasonably have concluded that Baker was experiencing conditions — such as alcohol abuse or addiction, a lack of reliable transportation, or the need to negotiate government benefits — that would make it difficult to acquire food while required to stay at home. The court accordingly could have determined that, under the circumstances of this case, grocery shopping was a rehabilitative activity that promoted Baker's successful reintegration into society. Because we are concerned that the superior court did not understand the scope of its authority in this regard, we must remand this case so that the superior court may make this determination in the first instance.

*Conclusion*

We REMAND this case to the superior court for further proceedings consistent with this opinion.

Judge ALLARD, concurring.

In *Tanner v. State* I wrote separately "to make clear that, in my view, our decision [was] limited to the facts presented in [that] case and that a defendant whose monitoring program includes very limited and highly circumscribed passes specifically to obtain groceries . . . should not necessarily suffer the same disqualification."[1] I write separately today to emphasize that Baker falls squarely within the category I described in *Tanner*, and that this conclusion accords both with the underlying equities of this case and with the legislative intent of AS 12.55.027(d).

Unlike Tanner, who received four hours of unstructured free time, Baker's grocery passes were limited and highly circumscribed. Complying with such strict regulation was undoubtedly rehabilitative for a defendant such as Baker, whose underlying offense involved a failure to comply with the directives of law enforcement. Moreover, as the majority points out, Baker did not request that his electronic monitoring program include passes for grocery shopping. Instead, it was the trial court that *sua sponte* ordered those passes because it did not see how Baker, who lived alone and was reliant on food stamps, was going to obtain the necessary sustenance to live without some ability to access the grocery store. There is nothing in the record to suggest that Baker was ever warned this would disqualify him from obtaining credit for the time he spent on electronic monitoring. Nor is there any reason why he would have believed this was true: unlike Tanner, who was supervised by a private monitoring company, Baker was supervised under the *state-administered* Pretrial Enforcement Division's electronic monitoring program.

As an appellate court, we are required to interpret statutes "according to reason, practicality, and common sense, considering the meaning of [the statute's]

---

[1] *Tanner v. State*, 436 P.3d 1061, 1064 (Alaska App. 2018) (Allard, J., concurring).

language, its legislative history, and its purpose."[2] Moreover, when interpreting a statute, the court's role is "to ascertain the legislature's intent, and then to construe the statute so as to implement that intent."[3]

When the legislature authorized jail-time credit for time spent on electronic monitoring, its goal was to save money for the State of Alaska while also rewarding defendants who productively engaged in employment, training, or other rehabilitative activities.[4] By all measures, Baker is the type of defendant envisioned by the legislature: he was gainfully employed while on electronic monitoring, and he successfully completed his time without any incidences or violations. Granting Baker 165 days of jail-time credit means that the State of Alaska need not incur any additional, unnecessary expenses; it also means that Baker is rewarded for his compliance and rehabilitative efforts, as the legislature intended.

We are obliged "to avoid construing statutes in a way that leads to patently absurd results or to defeat of the obvious legislative purpose behind the statute."[5] Likewise, we "should not construe statutes in a way 'that leads to unfair or incongruous results,' or in a manner which yields results that are inexplicably draconian or that have no discernible purpose."[6] Denying Baker credit for the time he successfully served on electronic monitoring would undermine the underlying purpose of AS 12.55.027(d) and lead to absurd, draconian results. Although the legislature did not explicitly include

---

[2]  *Wilson v. State, Dep't of Corr.*, 127 P.3d 826, 829 (Alaska 2006).

[3]  *Y.J. v. State*, 130 P.3d 954, 959 (Alaska App. 2006).

[4]  *See* Audio of House Judiciary Comm., House Bill 15, Sponsor Statement of Representative Tammie Wilson, 1:57:45-1:58:51 p.m. (Feb. 20, 2015).

[5]  *Williams v. State*, 853 P.2d 537, 538 (Alaska App. 1993).

[6]  *Miller v. State*, 382 P.3d 1192, 1197 (Alaska App. 2016) (quoting *Malutin v. State*, 198 P.3d 1177, 1185 (Alaska App. 2009)).

grocery shopping as one of the enumerated rehabilitative activities that a defendant on electronic monitoring could do, there is nothing in the plain language, legislative history, or legislative purpose to suggest that the legislature would view Baker's highly circumscribed and regulated grocery shopping passes as disqualifying.

For these reasons, I concur fully in the opinion of the Court.

Judge TERRELL, dissenting.

In this case we revisit an issue decided in *Tanner v. State*, specifically, whether grocery shopping constitutes a "rehabilitative activity" within the meaning of that term as it is used in AS 12.55.027(d).[1] This statute permits trial courts to award credit against a sentence of incarceration for time spent on bail release while confined at home, when that confinement is subject to electronic monitoring and other restrictions. The statute further lists situations where a person may be temporarily allowed to leave their home without losing sentence credit for time spent on electronic monitoring, *i.e.*, when they leave their home "for a (1) court appearance; (2) meeting with counsel; or (3) period during which the person is at a location ordered by the court for the purposes of employment, attending educational or vocational training, performing community volunteer work, or attending a rehabilitative activity or medical appointment."[2]

In *Tanner* we held that grocery shopping did not constitute a "rehabilitative activity" as that term is used in AS 12.55.027(d)(3).[3] But the majority now concludes that *Tanner* held only that one cannot say as a matter of law that grocery shopping always counts as a "rehabilitative activity," not that it could *never* constitute a "rehabilitative activity," and thus remands this case for further consideration. Because I disagree with the majority's interpretation of *Tanner* and of AS 12.55.027(d), I respectfully dissent.

The term "rehabilitative activity" is not defined in AS 12.55.027 or elsewhere in Title 12. In *Tanner*, Judge Mannheimer looked to a dictionary definition of the term "rehabilitate," which defined it as "'to prepare . . . an inmate . . . for useful

---

[1]   *See generally Tanner v. State*, 436 P.3d 1061 (Alaska App. 2018).

[2]   AS 12.55.027(d).

[3]   *Tanner*, 436 P.3d at 1063-64.

employment or successful integration into society by counseling, training, etc.'"[4] He noted that "[m]ost people would not consider grocery shopping to constitute a form of rehabilitative 'counseling' or 'training.'"[5] He further noted that AS 12.55.027(d) refers to "*attending* a rehabilitative activity," and stated that this "is a further indication that the legislature was referring to defendants who enroll in scheduled sessions of counseling or training."[6] As the words "attend" or "attending" are commonly used in this context, they refer to going to planned or scheduled activities. Judge Mannheimer ended the majority analysis in *Tanner* by noting that "AS 12.55.027(d) specifies the limited circumstances in which a defendant may be absent from their home and still get sentencing credit for the time they spend on electronic monitoring[,]" and that "[t]his limited list does not include passes that authorize a defendant to leave their home to run personal errands."[7]

I view the analysis set out in the majority opinion in *Tanner* as an interpretation of what the term "rehabilitative activity" in AS 12.55.027(d)(3) means as a matter of law, and as a categorical holding that grocery shopping does not fit within this definition. I believe *Tanner* correctly interpreted AS 12.55.027. Although I agree with my colleagues that it would make sense to allow pretrial defendants on electronic monitoring the ability to briefly leave their home to obtain groceries without forfeiting sentence credit, the current statute does not say that, and we have no warrant to creatively interpret the statute to achieve a different result.

---

[4]  *Id.* at 1063 (quoting *Webster's New World College Dictionary*, at 1208 (4th ed. 2004)).

[5]  *Id.*

[6]  *Id.*

[7]  *Id.* at 1064.

As noted previously, the term "rehabilitative activity" is not statutorily defined. In common usage, "rehabilitative" is used in several ways. We might refer to physical therapy following shoulder or knee surgery as rehabilitative. Occupational therapy for persons with disabilities or impairments might be referred to as rehabilitative. And a third common usage is in the context of efforts to assist criminal offenders change their lives and stop committing criminal offenses. It seems appropriate that in a statute regarding sentence credit for criminal offenders, this third usage of the term rehabilitative is the one at issue. So, it seems appropriate to examine how this sense of the word is used in Alaska law in evaluating how the legislature was likely using the term in AS 12.55.027(d)(3).

The Alaska Constitution provides in Article I, Section 12 that "[c]riminal administration shall be based upon . . . the principle of reformation." The Alaska Supreme Court has held that this language does not merely specify a policy preference but rather creates a fundamental state constitutional right to rehabilitation.[8] But neither the supreme court nor this Court have set out an exclusive or all-encompassing definition of the words "reformation" or "rehabilitation." However, the supreme court has applied these terms any number of times, and it is possible to reasonably define the terms from those applications.

In *State v. Chaney*, the court held that one of the objectives of Article I, Section 12 is "rehabilitation of the offender into a noncriminal member of society."[9] Rehabilitation, then, involves modification of the offender's criminal tendencies. The court further noted in *Goodlataw v. State, Dep't of Health & Soc. Services* that "[r]ehabilitation implies a therapeutic program of working over a period of time to

---

[8]    *Abraham v. State*, 585 P.2d 526, 530, 533 (Alaska 1978) (quoting *McGinnis v. Stevens*, 543 P.2d 1221, 1236 n.45 (Alaska 1975)).

[9]    *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

correct a complex problem."[10] Rehabilitation would include, for example, sex offender treatment in the case of a sex offender, to address the direct cause of the offender's crime.

The supreme court has also noted that criminal defendants often have problems, such as drug and alcohol abuse, which, while not necessarily the direct cause of a particular crime they committed, nonetheless contribute substantially to their commission of offenses and entanglement in a criminal lifestyle. The supreme court has thus held that the right to rehabilitation for such individuals includes the right to alcohol and substance abuse treatment.[11] Similarly, many persons are impelled into a life of crime because of a lack of job skills or education, and the supreme court has held that programs such as the Alaska Correctional Industries program, which attempt to remedy such deficiencies in terms of job skills and education, are "rehabilitative" within the constitutional sense of the word.[12] And, as the supreme court recently encapsulated the meaning of Alaska's state constitutional right to rehabilitation in the context of defining a formal rehabilitative program, "a rehabilitative program is one designed to address the factors that may lead to criminal behavior, such as addiction, lack of remunerative skills, lack of education, or deviant proclivities."[13]

---

[10] *Goodlataw v. State, Dep't of Health & Soc. Services*, 698 P.2d 1190, 1193 (Alaska 1985) (emphasis omitted).

[11] *Abraham*, 585 P.2d at 533; *see also Waters v. State*, 483 P.2d 199, 202 (Alaska 1971); *Huff v. State*, 568 P.2d 1014, 1020 (Alaska 1977); *Parks v. State*, 571 P.2d 1003, 1006 (Alaska 1977).

[12] *See Ferguson v. State, Dep't of Corr.*, 816 P.2d 134, 139-40 (Alaska 1991). By contrast, in *Hays v. State*, 830 P.2d 783, 785 (Alaska 1992), the supreme court held that "transfer from one prison employment position to another" did not interfere with the right to rehabilitation.

[13] *State, Dep't of Corr. v. Stefano*, 516 P.3d 486, 494-95 (Alaska 2022).

To be sure, the supreme court has declined to endorse any formula as the *sine qua non* of what makes something "rehabilitative" within the meaning of Alaska Constitution Article I, Section 12. In *Brandon v. State, Dep't of Corr.*, the State argued that an inmate's interest in receiving visitation was not rehabilitative within the meaning of Article I, Section 12 because it did not involve a formal program designed to address root causes of criminal behavior, such that transfer to an out-of-state prison did not implicate the inmate's state constitutional right to rehabilitation.[14] The supreme court disagreed, citing a prisoners' rights treatise for the proposition that "[n]o single factor has been proven to be more directly correlated with the objective of a crime-free return to society than visiting."[15]

Justice Rabinowitz dissented, agreeing with the State's interpretation of the above-cited cases as "defin[ing] the constitutional right to rehabilitation as a guarantee of access to a formal program addressed to the specific problems that impelled the prisoner's antisocial conduct" and stating that "[v]isitation does not qualify as the type of therapeutic program for adult prisoners to which the constitutional right to rehabilitation attaches."[16] His attempt to cabin the meaning of "rehabilitation" to the context of formal programs was unsuccessful, but the supreme court's more recent discussion in *State, Dep't of Corr. v. Stefano* nonetheless illustrates that the right to rehabilitation finds its primary expression in the context of formal rehabilitative programming.[17]

---

[14]  *Brandon v. State, Dep't of Corr.*, Supreme Court File No. S-06983, Appellee's Brief at 25-29.

[15]  *Brandon v. State, Dep't of Corr.*, 938 P.2d 1029, 1032 n.2 (Alaska 1997) (citing 2 Michael Mushlin, *Rights of Prisoners* § 12.00 (2d ed. 1993)).

[16]  *Id.* at 1034 (Rabinowitz, J., dissenting).

[17]  *Stefano*, 516 P.3d at 491-94 (surveying Alaska cases).

The legislature, in using the term "rehabilitative" in AS 12.55.027(d)(3), was not required to use the term in the more expansive sense used by the *Brandon* majority with respect to the state constitutional right to rehabilitation, and was free to use the term in the more common use seen in the bulk of Alaska cases described above. I agree with *Tanner* that the use of the words "attending" and "activity" reinforce the view that the legislature adopted this interpretation of "rehabilitative activity." One "attends" things that are planned or scheduled, and "activity" bears this connotation.

The last point worth noting is the legislature's change from the use of the word "counseling" to "rehabilitative activity." An early draft of the bill described the last type of permissible absence from home confinement as "attending a counseling or medical appointment," but this was changed to "attending a rehabilitative activity or medical appointment."[18] The legislative history concerning the change in terms is sparse, but it can be inferred from context. One reason for the change in terms was that the term "counseling" was vague and untethered from addressing the root causes of criminal behavior. Indeed, in testifying regarding the Department of Law's concerns with the proposed legislation, Deputy Attorney General Richard Svobodny noted that under previous Alaska statutes related to sentence credit, people had sought credit for time spent attending WeightWatchers's meetings, and he expressed the concern that allowing credit for time spent attending "counseling" would permit such credit.[19]

The other reason for the change was that "counseling" would likely encompass only one-on-one counseling or group therapy, but there are additional practices that take place within rehabilitative programs, specifically those that a pretrial defendant might be enrolled in, that do not fit within the rubric of "counseling" and that

---

[18] *Compare* H.B. 15, 29th Leg., 1st Sess. (as introduced, Mar. 18, 2015), *with* AS 12.55.027(d)(3).

[19] Audio of House Judiciary Comm., House Bill 15, testimony of Deputy Attorney General Richard Svobodny, 1:20:30-1:21:00 p.m. (Mar. 23, 2015).

might more properly be viewed as an "activity." Specifically, a number of statutes regarding bail conditions for various types of offenders require the person to participate in drug or alcohol treatment, which require weekly in-person appearances and drug or alcohol testing.[20]

For these reasons, I conclude that the term "rehabilitative activity" in AS 12.55.027(d)(3) does not include grocery shopping, and I do not believe that trial courts can determine that it does on an individualized basis. I agree with my colleagues' basic policy concerns and conclude that the legislature should consider amending the statute so that people can obtain necessities and still receive credit for electronic monitoring.

---

[20] *See, e.g.*, AS 12.30.011(b)(21); AS 12.30.016(b)(6)-(7), (c)(7); AS 47.38.020. Persons awaiting trial who have been the subject of a domestic violence restraining order may also be ordered to participate in programs governed by AS 47.28.020. *See* AS 18.66.100(c)(15).